UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

BRICKLAYERS LOCAL 4 IN/KY,                                    Appellant

v.                                             Civil Action No. 3:22-cv-432-RGJ

ROSA MOSAIC AND TILE COMPANY,                                Appellee

* * * * *

**MEMORANDUM OPINION & ORDER**

Appellee Rosa Mosaic and Tile Company ("Rosa") moved to dismiss this appeal as equitably moot. [DE 16]. Appellant Bricklayers Local 4 IN/KY ("Bricklayers") responded [DE 20] and Rosa replied [DE 22]. This matter is ripe. For the reasons below, Rosa's Motion to Dismiss [DE 16] is **GRANTED**.

## I.    BACKGROUND

This case involves an appeal from the Bankruptcy Court in the matter of *In re Rosa Mosaic & Tile Company*, Case No. 21-31649-crm ("Bankruptcy Case"). The basis of the appeal is an August 11, 2022 Order in the Bankruptcy Case rejecting a collective bargaining agreement ("CBA") between Rosa and Bricklayers. [DE 16-1 ("Rejection Order")]. The Rejection Order explains the Bankruptcy Case and the facts that led the parties to this litigation. [DE 16-1 at 183–99]. Accordingly, the Court incorporates those facts by reference.

Bricklayers appealed the Rejection Order to this Court on August 19, 2022. [DE 1]. The Court stayed the briefing schedule pending resolution of Rosa's Motion to Dismiss. [DE 21]. On August 25, Rosa filed its Plan of Reorganization for Small Business Under Chapter 11 in the Bankruptcy Case. [DE 16-2 ("Plan")]. No creditor objected to the Plan, which the Bankruptcy Court confirmed on October 21. [DE 16-4]. The Plan became effective, pursuant to Article 9.01,

1

on November 4. [DE 16-2 at 259]. Bricklayers moved to stay the Plan on November 14 [DE 16-6] but withdrew their motion on December 7 [DE 16-8]. Rosa filed its Notice of Substantial Consummation of Chapter 11 Plan on December 9. [DE 16-5].

The Plan has several requirements relevant to the Court's analysis. First, the Plan requires John J. Cristofoli and Anna C. Tatman, who own all membership interest in Rosa, to make an equity contribution of $335,942.72. [*Id.* at 257]. Rosa also assumed several executory contracts and unexpired leases. [*Id.* at 256]. All executory contracts and unexpired leases that were not explicitly accepted as part of the Plan were rejected. [*Id.*]. In addition, the Plan requires regular distributions to Rosa's creditors. [*Id.* 250–55]. Rosa contends that the Plan is premised on its rejection of the CBA. [DE 16 at 169].

## II.    STANDARD

Equitable mootness is "a prudential doctrine that protects the need for finality in bankruptcy proceedings and allows third parties to rely on that finality" by "prevent[ing] a court from unscrambling complex bankruptcy reorganizations when the appealing party should have acted before the plan became extremely difficult to retract." *In re Ormet Corp.*, 355 B.R. 37, 40–41 (S.D. Ohio 2006) (citing *In re Grimland, Inc.*, 243 F.3d 228, 231 (5th Cir. 2001) and *In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir. 2000)). "There is a big difference between *inability* to alter the outcome (real mootness) and *unwillingness* to alter the outcome (equitable mootness)." *In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994) "Stated bluntly, equitable mootness negates appellate review of the confirmation order or the underlying plan, regardless of the problems therein or the merits of the appellant's challenge." *In re City of Detroit, Michigan*, 838 F.3d 792, 798 (6th Cir. 2016) (citing *In re Made in Detroit, Inc.*, 414 F.3d 576, 581 (6th Cir. 2005)).

The Sixth Circuit analyzes equitable mootness using a three-part test: (1) whether a stay has been obtained; (2) whether the plan has been 'substantially consummated'; and (3) whether the relief requested would significantly and irrevocably disrupt the implementation of the plan or disproportionately harm the reliance interests of other parties not before the court. *In re City of Detroit*, 838 F.3d at 798 (quoting *In re United Producers, Inc.*, 526 F.3d 942, 947 (6th Cir. 2008)). "[A] plan of reorganization, once implemented, should be disturbed only for compelling reasons." *City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1225 (6th Cir. 1995) (quoting *In re UNR Indus.*, 20 F.3d at 769).

## III.   ANALYSIS

Rosa contends that it has satisfied all three elements of equitable mootness and, as a result, Bricklayers' appeal should be dismissed.  [DE 16 at 173].  Bricklayers concedes that it did not obtain a stay.  [DE 20 at 300].  In contends, however, that Rosa cannot satisfy the second or third factors of equitable mootness.  [*Id.* at 300–301].

### A.  Obtaining a Stay

Bricklayers concedes that it did not obtain a stay of the Plan in the Bankruptcy Case.  [DE 20 at 304].  Failure to obtain a stay "is not necessarily fatal to the appellant's ability to proceed." *City of Covington*, 71 F.3d at 1225–26.  That said, parties "with objections to the plan should act early and quickly, moving for stays where necessary to protect the status quo." *In re Arbors of Houston Assocs. Ltd. P'ship*, No. 97-2099, 1999 WL 17649, at *2 (6th Cir. Jan. 4, 1999).  As the Court has discussed, Bricklayers moved to stay the Plan on November 14, 2022, [DE 16-6], but withdrew their motion on December 7 [DE 16-8].  Though not necessarily fatal, failure to obtain a stay is significant because it leads—as it did here—to implementation of the Plan. *See In re United Producers, Inc.*, 526 F.3d at 948.  Because Bricklayers failed to obtain a stay in the

Bankruptcy Case, Rosa has satisfied the first element of equitable mootness. *See In re City of Detroit*, 838 F.3d at 798.

### B.  Substantial Consummation of the Plan

Rosa contends that it has substantially consummated the Plan as evidenced by its Notice of Substantial Consummation [DE 16-5]. [DE 16 at 174]. In response, Bricklayers contends that Rosa's Plan does not contain intricate transactions necessary to support a finding of equitable mootness. [DE 20 at 306].

The Sixth Circuit determines "substantial consummation" based on the Bankruptcy Code definition under 11 U.S.C. 1101(2). *See In re City of Detroit*, 838 F.3d at 799; *In re United Producers*, 526 F.3d at 948; *In re Ormet Corp.*, No. 2:04-CV-1151, 2005 WL 2000704, at *6 (S.D. Ohio Aug. 19, 2005); *see also In re Manges*, 29 F.3d 1034, 1040 n.10 (5th Cir. 1994). The Bankruptcy Code defines "substantial consummation" as:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2). "If a plan has been substantially consummated there is a greater likelihood that overturning the confirmation plan will have adverse effects on the success of the plan and on third parties." *In re United Producers*, 526 F.3d at 948.

First, considering the definition of "substantial confirmation" under the Bankruptcy Code, Rosa has transferred substantially of the property proposed to be transferred under the Plan. *See* § 1101(2)(A). The Plan contemplated a transfer of $335,042.72 from the equity owners to Rosa

within 180 days of the effective date.  [DE 16-2 at 257].  The transfer was completed, which satisfied the first element of substantial consummation.  *See* § 1101(2)(A).

Next, Rosa must have assumed management of substantially all property dealt with by the Plan.  *See* § 1101(2)(B).  The Plan required Rosa to assume certain executory contracts and unexpired leases.  [DE 16-2 at 256].  On November 4, 2022, Rosa retained all property of the estate for use in its business.  [DE 16 at 175–76].  Therefore, Rosa has assumed management of substantially all property dealt with by the Plan, which satisfies the second element of substantial consummation.  *See* § 1101(2)(B).

Finally, Rosa must have started distributions pursuant to the Plan.  *See* § 1101(2)(C).  Rosa submits that it began distributions under the Plan after it became effective on November 4, 2022.  [DE 16 ay 176].  Accordingly, Rosa has satisfied the third and final element of substantial consummation.  *See* § 1101(2)(C).

Bricklayers does not refute these contentions.  Instead, Bricklayers contends that equitable mootness cannot apply because Rosa's Plan was not sufficiently complex.  [DE 20 at 306].  This is not part of the test for substantial confirmation.  *See In re City of Detroit*, 838 F.3d at 799.  But Bricklayers compares Rosa's bankruptcy to the *Ormet* and *City of Detroit* proceedings.[1]  [DE 20 at 305–307].  While the debtors in both cases were substantially larger than Rosa, Bricklayers has not cited a rule prohibiting courts from applying equitable mootness to smaller, Subchapter V debtors.  Bricklayers also contends that it does not wish to revise any part of the Plan.  [DE 20 at 307].  However, it does ask the Court to overturn the Rejection Order.  [DE 1].  Rosa has attested that the Plan was based on rejecting the CBA.  [DE 16 at 178].  Overturning the Rejection Order would require Rosa to reevaluate its projections and the feasibility of the Plan.  [*Id.*].  Bricklayers

---

[1] Rosa also cites to several cases outside the Sixth Circuit, which the Court need not analyze.  [DE 20 at 307–308].

has failed to rebut Rosa's assertion of substantial consummation.  As a result, the Court finds that Rosa's plan was substantially consummated, which satisfies the second element of equitable mootness.  *See In re City of Detroit*, 838 F.3d at 798.

### C.  Disruption of the Plan and Harm to Third-Party Interests

"The most important factor this Court must consider is 'whether the relief requested would affect either the rights of parties not before the court or the success of the plan.'"  *In re United Producers*, 526 F.3d at 948 (quoting *In re Am. HomePatient, Inc.*, 420 F.3d 559, 564 (6th Cir. 2005)).  "This requires a case-by-case assessment of the feasibility and effect of the relief requested, and determination of 'whether it amounts to a piecemeal revision of the plan or a wholesale rewriting of it.'"  *In re City of Detroit*, 838 F.3d at 799 (quoting *In re United Producers*, 526 F.3d at 948).  The Sixth Circuit has refused to declare an appeal equitably moot when "there is uncontested evidence that the creditor's requested relief would not require abandonment of the plan." *In re United Producers*, 526 F.3d at 950.[2]

#### 1.  Disruption of the Plan

Rosa argues that providing Bricklayers relief in this appeal would threaten the success of the Plan because it was based on rejection of the CBA.  [DE 16 at 178].  In response, Bricklayers contends that its appeal only affects the CBA, not the Plan.  [DE 20 at 311].

Bricklayers concedes that Rosa's Plan was not proposed or confirmed until after the Bankruptcy Court entered the Rejection Order.  [*Id.*].  This timeline supports Rosa's contention that the Plan was built on its rejection of the CBA.  [DE 22 at 383].  Rosa would have relied on the Rejection Order when developing its liquidation analysis, structuring its proposed plan, and evaluating the proposed plan's feasibility, as evidenced in the Plan:

---

[2] The Court notes that Bricklayers cites the standard from a Ninth Circuit case, *Motor Vehicle Cas. Co. v. Thorpe*, 677 F.3d 869 (9th Cir. 2012).  Yet the Court must follow the standards set forth by the Sixth Circuit.

> These commercial projects often utilize product lines and installation methods that require less skill to install, which makes it unfeasible for a contractor to pay a premium for skilled (union) labor and still effectively bid on those projects. Indeed, the Debtor has suffered from a unique cost disadvantage—paying its workforce 18–20% more than its non-union competitors pay for labor.

[DE 16-2 at 246]. The Plan also discusses the Rejection Order and Bricklayers' efforts to dismiss the Bankruptcy Case. [*Id.* at 247].

If relief was granted to Bricklayers, then Rosa would be required to update the essential terms of its Plan. Reversal of the Rejection Order would require Rosa to prepare updated projection based on increased wage and labor costs for the same reasons described in the Plan. [*Id.* at 246]. Rosa submits that those updated projections would likely make the plan unfeasible. [DE 22 at 383–84]. Rosa contends that it simply would not be profitable absent rejection of the CBA. [*Id.* at 382]. Reversal of the Rejection Order would require precisely the type of "wholesale rewriting" of the Plan that the Sixth Circuit sought to prevent. *See In re City of Detroit*, 838 F.3d at 799. Bricklayers has failed to provide any, let alone uncontested, evidence that its requested relief would not require abandonment of the Plan. *See In re United Producers*, 526 F.3d at 950. As a result, the Court finds that granting Bricklayers' proposed relief would disrupt the Plan.

## 2. *Harm to Third-Party Interests*

Rosa argues that the relief requested would negatively affect the interests of third parties, including those who the company contracted with after the Plan was confirmed. [DE 16 at 177]. Bricklayers responds that no creditors will be harmed if relief is granted. [DE 20 at 309–10].

The Court has held that granting relief to Bricklayers would require Rosa to rewrite its Plan. *See supra* Section III.C.1. Rosa asserts that creditors agreed to new loan terms, contracts were rejected and assumed, and equity members agreed to contribute $335,942.72, which was all based on the new financial reality created by the Rejection Order. [DE 16 at 177]. Furthermore,

Rosa has continued to operate without the CBA. Rosa has hired non-union employees that would likely lose their jobs if the CBA was reinstated. [DE 22 at 384]. Rosa also bid on projects based on their new labor costs. [*Id.*]. These bids would no longer be profitable, which would jeopardize the counterparties to these unrelated contracts. [*Id.*].

Bricklayers notes that no creditors would be affected, but it fails to recognize that terms set forth in the Plan were negotiated based on the rejection of the CBA. [DE 20 at 309–10]. Bricklayers cites *In re Appletree Markets*, 155 B.R. 431 (S.D. Tex. 1993) in support of its contention that reversing the Rejection Order would not adversely affect third parties. [*Id.* at 310]. Like this case, the debtor rejected a collective bargaining agreement in bankruptcy and the union appealed the bankruptcy court's rejection order. *See In re Appletree Mkts.*, 155 B.R. at 434–35. The Southern District of Texas held that the appeal was not equitably moot because the debtor filed a new proposed plan of reorganization and disclosure statement after the union appealed the bankruptcy court's rejection order. *See id.* at 436–37. The court reasoned that the parties were able to consider the possibility that the rejection order may be overturned when negotiating the new plan of reorganization. *See id*.

Despite the Southern District of Texas' ruling, courts in the Sixth Circuit have not extended *Appletree Markets*. *See In re Ormet Corp.*, 2005 WL 2000704, at *6–7. In *Ormet*, the Southern District of Ohio noted that the doctrine of equitable mootness extended to the appeal of certain orders, such as the Rejection Order, that are "integral" to the Plan. *See* 2005 WL 2000704, at *6–7 (citing *Bennett v. Veale*, Nos. 93-3016, 93-4180, 1995 WL 385147, at *3 (6th Cir. June 27, 1995) and *In re Continental Airlines*, 91 F.3d 553 (3d Cir. 1996)). The *Ormet* Court held that *Appletree Markets* was unpersuasive where the debtor could show that reversal of the bankruptcy court's order would have an adverse effect on third parties and undermine the plan or the debtor's viability.

*See In re Ormet Corp.*, 2005 WL 2000704, at *7 (noting that *Appletree Markets* only demonstrated an adverse effect from a successful appeal of the confirmation order instead of the rejection order). The Court finds that this case more closely aligns with *Ormet* because Rosa has demonstrated that reversing the Rejection Order would have an adverse effect on third-party interests and require a wholesale rewrite of the Plan. As a result, the Court finds that Rosa has satisfied the third element of equitable mootness. *See In re City of Detroit*, 838 F.3d at 798.

Because Rosa has satisfied the three-factor test for equitable mootness, the Court finds that Bricklayers' appeal is equitably moot. Bricklayers has failed to establish a compelling reason to reverse the Rejection Order, which would fundamentally undermine the Plan. *See City of Covington*, 71 F.3d at 1225. Rosa's Motion to Dismiss [DE 16] is **GRANTED**.

## IV.     CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. Rosa's Motion to Dismiss [DE 16] is **GRANTED**.

2. The Court will enter separate judgment.

cc:     Counsel of record

9